## Case No. 9,679.

### The M. K. RAWLEY.

[2 Lowell, 447;[1] 22 Int. Rev. Rec. 49; 3 Cent. Law J. 56.]

District Court, D. Massachusetts. Dec., 1875.

CHARTER-PARTY — BILL OF LADING — VENDOR'S RIGHTS—DUTY OF MASTER—COMPULSION.

1. A shipper of goods has the right to have the bill of lading made to his own order; and, if the master has been instructed by the charterers not to sign such a bill, his only alternative is to reject the goods. He is not entitled to keep the goods and refuse to give such a bill.

2. Though the vendor of goods may be bound by his contract with the vendee to ship them to the order of the vendee, the master of the ship chartered by the vendee must take the delivery in such manner as the shipper makes it, or reject the goods altogether.

3. Where a master made his bill of lading to the order of the shipper, and the shipper, by his possession of the bill, induced the owners and consignees of the goods to accept and pay a draft, quaere, whether this acceptance and payment were made under compulsion, and whether the amount of the draft could be recovered of the master, even if he were not justified in signing a bill of lading in that form.

This libel was filed by Messrs. Moseley, Wheelwright, & Co., of Boston, charterers of the schooner M. K. Rawley, against that vessel, for an alleged breach of the charter-party. The case for the libellants was, that they took up the schooner for a voyage from Port Royal, South Carolina, to Brunswick, Maine, and agreed to furnish a full cargo of hard pine lumber, at an agreed rate of freight; that the libellants were bound to furnish the lumber with despatch at Brunswick, and ordered the cargo of Mr. Hudgins, a manufacturer of lumber, in Charleston, at twenty dollars per thousand, free on board.

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

They alleged that Hudgins, with whom they had a running account, was indebted to them for the full value of this cargo, or that they had advanced such value to him. Hudgins shipped a part of the lumber, and took a bill of lading to his own order, which he indorsed to a third person as security for a draft on the libellants for $1,000; which the libellants accepted and paid. Thereupon the libellants procured the brokers who had negotiated the charter to write a letter to the master, of which the material parts are these: "Your charterers, Messrs. Moseley, Wheelwright, & Co., wish us to write you not to sign any bill of lading, except it reads to Moseley, Wheelwright, & Co.; they do not want it to order. They say if the shipper will not furnish bill of lading to them, go off without one, and they will hold you harmless. They do not care to have you say that you are acting upon their advice." When the letter was received, most of the cargo had been delivered; but the second bill of lading had not been presented, and the master requested Hudgins to make it to the libellants, which he declined to do, and threatened the master that he would not let him leave the port unless he signed a bill of lading, as before; which the master then did. Then Hudgins telegraphed the libellants that he had procured a bill of lading to his own order, and should indorse it to some one else, unless the libellants would consent to accept a draft; they replied that they would accept to a moderate amount, and he drew for $1,650, which they paid. The damages sought to be recovered of the ship were the amount of the draft of $1,650, which the libellants alleged that they were forced to accept and pay in order to obtain possession of the cargo; the bill of lading having been indorsed by Hudgins to a bank in Boston, as security for the draft. The answer asserted the claimants' ignorance of the state of accounts between the shipper and the libellants, and averred that the master was bound and obliged to give the bill of lading in the form demanded by the shipper. It was understood that Hudgins denied that the state of the account was such that the cargo had been fully paid for; but for the purpose of a preliminary hearing it was admitted that the libellants' view of the account was the true one, the right being reserved to take evidence upon that point afterwards, if necessary.

J. C. Dodge, for libellants.
I. T. Drew, for claimants.

LOWELL, District Judge. The libellants contend that the lumber was delivered to them when it was sent on board the ship which they had chartered to transport it. If this is so, their next point is sound, that the vendor had no right to revoke his acts and reassert a dominion which he had once parted with. Ogle v. Atkinson, 5 Taunt. 759;

Stanton v. Eager, 16 Pick. 467; Bolin v. Huffnagle, 1 Rawle, 9.

A vendor, however, may make a conditional delivery, by which he does not divest himself of the control of the property, but makes the carrier his own agent. Mitchel v. Ede, 11 Adol. & E. 888; Wait v. Baker, 2 Exch. 1; Ellershaw v. Magniac, 6 Exch. 570, note. A delivery at the wharf is an incomplete act, ambiguous in itself, and to be explained by the vendor at the time, or before the shipment is finished. In this case the act was explained not only by what followed, but by what had gone before, because in shipping a former part of the same cargo the shipper had demanded and received a bill of lading in his own name.

The simplest mode of stating the rights of the parties is, that however strongly one may be bound to convey his property to another, the title does not pass until the owner chooses to pass it, or until a court of equity compels him to do so; and, therefore, if, against all reason and right, he insists on retaining the possession, until the transit is ended, he does retain it. The only alternative for the master in this case was to refuse to receive the goods on these terms. But this is not what the libellants wished, nor is their complaint that he failed to reject the cargo. They were not willing to pay dead freight; and therefore required him to do what he had no right to do, promising to hold him harmless. He had no right to receive the goods on any other terms than those on which they were offered: he must accept or reject. If Hudgins had been a mere agent to forward the goods, the libellants might have revoked his agency; but a vendor, even if paid, is not a mere agent.

The question has been lately decided in favor of the master in the court of exchequer in England, by two judges against one; and it seems to me that the opinion of the majority is sound, for the reasons already given. The case was a very hard one for the buyers of the goods, but the principles that must decide it were considered too strong for the equities of the case. Kreeft v. Thompson, L. R. 10 Exch. 274. In that case the master had not been notified by the charterers what sort of bill of lading he was expected to sign, further than the charterparty itself might inform him. But this is immaterial; because the decision turned upon the right of the shipper to dictate the terms upon which he would deliver his goods, which would be the same though the charterers themselves had been present. They could not have accepted in part and rejected in part.

But if we grant that the property had once passed to the charterers, can the master be held to pay as damages for delivering the bill of lading a sum of money which the libellants have paid to the shipper? The latter could not by obtaining such a document revest the property in himself, or trans-

fer a good title to one claiming under him, even in good faith. Ogle v. Atkinson, 5 Taunt. 759; Stanton v. Eager, 16 Pick. 467; Kreeft v. Thompson, L. R. 10 Exch. 274. The bill of lading, then, would be waste paper as against the libellants, though it might give the shipper the means of deceiving others. Where, then, was the legal compulsion upon the libellants to accept the draft? If Hudgins had retained actual possession of the cargo, the payment would have been compulsory; but if he had only a paper title which was worthless, can it be so considered? A slight duress or obstruction might be enough, as between the party exacting the payment and him who makes it, to deprive the payment of its voluntary character, and to warrant an action of assumpsit to recover it back. The question is, whether a third person has not a somewhat different position; whether, if the master was wrong in giving this bill of lading, he should be held liable for damages which are not the legal and natural consequences of his act.

Those natural consequences would seem to be the possible injury to third persons, who should advance money on the bill of lading in ignorance of its invalidity; and I am not at all prepared to say that a master might not be liable in tort, in some cases, for damage of that character. So far as the shipper is concerned, the master is presumed to know that his bill of lading cannot avail against the true owner, though for any expense or trouble to which the latter might be put to vindicate his title there might be a liability. None such were suffered in this case; the libellants yielded to a demand which could not be enforced; wisely, perhaps, but still not under a strict necessity. As, however, I consider the first point a clear one against the libellants, I do not decide this. Libel dismissed with costs.